# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| BOYNTON BEACH FIREFIGHTERS' PENSION FUND on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HCP, INC.; HCR MANORCARE, INC.; LAURALEE MARTIN; TIMOTHY SCHOEN; PAUL A. ORMOND; and STEVEN M. CAVANAUGH,<br><br>Defendants. | No. 3:16-cv-01106-JJH |

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS <u>SELECTION OF LEAD COUNSEL</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

SUMMARY OF THE ACTION ............................................................................................... 3

ARGUMENT ............................................................................................................................ 6

    A.    Mississippi Should Be Appointed Lead Plaintiff .................................................. 7

        1.    Mississippi Has The Largest Financial Interest In The Relief Sought By The Class ........................................................................................ 7

        2.    Mississippi Otherwise Satisfies The Requirements Of Rule 23 .................. 8

    B.    The Court Should Approve Mississippi's Selection Of Lead Counsel ................ 11

CONCLUSION ....................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*In re Am. Med. Sys. Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ...............................................................................................9

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
  No. 5:03 CV 2166, 2004 WL 3314943 (N.D. Ohio May 12, 2004) ................................7, 8, 9

*Ohio Pub. Emps. Ret. Sys. v. Fannie Mae*,
  357 F. Supp. 2d 1027 (S.D. Ohio 2005) ....................................................................... *passim*

*Pio v. Gen. Motors Co.*,
  No. 14-11191, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ...........................................7, 8

*Steiner v. Frankino*,
  No. 1:98-CV-264, 1998 WL 34309018 (N.D. Ohio July 16, 1998) .......................................10

*In re WorldCom, Inc. Sec. Litig.*,
  No. 02 CIV. 3288 (DLC), 2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ..............................12

**Rules and Statutes**

Fed. R. Civ. P. 23(a)(4) ..................................................................................................................9

15 U.S.C. § 78u-4(a)(3)(A) .........................................................................................................6, 7

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................. *passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) .....................10

The Public Employees' Retirement System of Mississippi ("Mississippi") respectfully submits this memorandum in support of its motion: (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (2) for approval of its selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Barrack, Rodos & Bacine ("Barrack Rodos") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The above-captioned action alleges that HCP, Inc. ("HCP"), HCR ManorCare, Inc. ("ManorCare"), and certain of their senior executives (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).[1] Specifically, throughout the period from March 30, 2015 through February 8, 2016, inclusive (the "Class Period"), Defendants misrepresented ManorCare's financial performance and the value of HCP's ManorCare assets, which included billions of dollars of real estate facilities and an approximately 9% equity stake in ManorCare. In addition, Defendants misrepresented that HCP's revenue stream from ManorCare leases, which comprised 30% of HCP's total revenue, was secure. HCP and ManorCare also represented that ManorCare had "a long history of compliance with regulations," and that ManorCare's billing practices had been "audited" in the past and were "to the standard one would want." As a result of these

---

[1] In addition to the above-captioned action, another related securities class action is pending against HCP and ManorCare in the Central District of California. *See Ryu v. HCP, Inc., et al.*, No. 2:16-cv-04981 (C.D. Cal. filed July 7, 2016) ("*Ryu*"). Mississippi is filing a concurrent motion seeking appointment as Lead Plaintiff in *Ryu*.

misrepresentations, HCP common stock traded at artificially inflated prices during the Class Period.

In truth, Defendants were aware of or recklessly ignored that ManorCare was engaged in rampant billing fraud, which allegedly generated over $6 billion in false claims for "reimbursement" submitted to government programs. ManorCare's billing fraud was the subject of multiple whistleblower lawsuits, and an investigation by the United States Department of Justice ("DOJ"). As a result of ManorCare's billing fraud, ManorCare's reported earnings and revenues contained fraudulently-obtained reimbursements. Moreover, both HCP and ManorCare represented that ManorCare was in compliance with regulations and downplayed the impact of the whistleblower and DOJ claims on HCP's financial condition. In reality, ManorCare was rapidly deteriorating due to the exposure of its billing fraud, which put HCP's revenue stream from its ManorCare leases at risk, and called into question the value of HCP's equity stake in ManorCare, and the ManorCare real estate assets that HCP owned.

On April 21, 2015, HCP disclosed that the DOJ had intervened in the whistleblower lawsuits and filed a consolidated complaint. Then, on May 5, 2015, HCP revealed that it had recorded a non-cash impairment charge of $478 million related to certain of its lease arrangements with ManorCare. Finally, on February 9, 2016, HCP disclosed that its equity stake in ManorCare had been written down to zero, and that it had taken an $836 million non-cash impairment on its ManorCare lease assets and placed all of its ManorCare real estate assets on a "Watch List."

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine the movant with the "largest financial interest" in the relief sought by the Class in this litigation,

that also has made a prima facie showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For the reasons set forth below, Mississippi is the "most adequate plaintiff" by virtue of the approximately $2 million in losses it incurred on its investment in HCP common stock. Mississippi also satisfies the relevant requirements of Rule 23, because its claims are typical of all members of the Class, and it will fairly and adequately represent the Class.

Indeed, Mississippi is a prototypical Lead Plaintiff under the PSLRA because it is a sophisticated institutional investor with a real financial interest in the litigation and has experience serving as Lead Plaintiff in complex securities actions and supervising the work of outside counsel. Accordingly, Mississippi has both the incentive and ability to supervise and monitor counsel. Further, Mississippi fully understands the Lead Plaintiff's obligations to the Class under the PSLRA given its experience serving as Lead Plaintiff in other complex securities class actions, and it is willing and able to undertake those responsibilities to ensure the vigorous prosecution of this action. Mississippi has selected Bernstein Litowitz and Barrack Rodos, law firms with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class. Accordingly, Mississippi requests that the Court appoint it Lead Plaintiff and otherwise grant its motion.

## SUMMARY OF THE ACTION

HCP is a real estate investment trust ("REIT") focused on the healthcare industry. Throughout the Class Period, HCP was highly dependent on the operations of ManorCare, a nursing home operator with facilities in Ohio and elsewhere, which served as HCP's most significant client. Prior to the start of the Class Period, HCP invested directly in ManorCare, purchasing its real estate facilities for approximately $6 billion (which were then leased back to

ManorCare) and taking an approximately 9% equity stake in ManorCare. As a result of that transaction, ManorCare had a significant impact on several aspects of HCP's operations and finances and was highly important to HCP investors. ManorCare was HCP's largest tenant, with 30% of HCP's revenue derived from its leases with ManorCare during the Class Period. Moreover, nearly 40% of HCP's real estate assets were subject to long-term leases with ManorCare. Accordingly, ManorCare's operations and business were critically important to HCP and its investors.

Throughout the Class Period, Defendants misrepresented ManorCare's financial performance, and falsely assured investors that HCP's ManorCare assets and revenue stream from its leases with ManorCare were secure and unimpaired. According to statements issued by both ManorCare and HCP, ManorCare appeared to be in a strong financial condition that made it a reliable "partner" for HCP. As ordered by the SEC, beginning on May 24, 2013, HCP separately disclosed ManorCare's own audited financial results in HCP's filings with the SEC, and represented that ManorCare's financial results were prepared in accordance with U.S. generally accepted accounting principles ("GAAP"). Moreover, HCP and ManorCare represented that ManorCare had "a long history of compliance with regulations," and that ManorCare's billing practices had been "audited" in the past and were "to the standard one would want."

In truth, throughout the Class Period, Defendants were aware or recklessly ignored that ManorCare was engaged in rampant billing fraud, which allegedly generated over $6 billion in false claims for "reimbursement" submitted to government programs. Specifically, to ensure that it would receive a daily reimbursement rate from Medicare at the highest possible "Ultra High"

4

level, ManorCare submitted false claims for reimbursement for therapeutic services that did not meet the requisite criteria.

Moreover, in order to maximize reimbursement payments from government programs, ManorCare systematically forced patients to remain in therapy for longer than necessary and subjected patients to unnecessary, unreasonable, and even harmful treatment. One of the most effective ways to increase therapy time was to combine patients and subject them to unnecessary group therapy. For example, in 2008 an Eastern Division Regional Rehabilitation Manager at ManorCare instructed a subordinate Director of Rehabilitation to maximize revenue by increasing group therapy time for Medicare patients, writing: "group the crap out of every Medicare A [patient] you have which will at least boost that number …."

ManorCare's billing fraud subjected ManorCare to three whistleblower lawsuits, which were filed under seal in the U.S. District Court for the Eastern District of Virginia in 2009 and 2011, and an investigation by the DOJ. In addition, ManorCare's billing fraud put HCP's revenue stream from its ManorCare leases at risk, and called into question the value of HCP's equity stake in ManorCare, and the ManorCare real estate assets that HCP owned.

The truth was revealed through a series of corrective disclosures, beginning on April 21, 2015, when HCP disclosed that the DOJ had intervened in the whistleblower lawsuits and filed a consolidated complaint. In connection with the DOJ's intervention, the DOJ and whistleblower complaints were unsealed, and those allegations were made public for the first time. Defendants, however, continued to conceal from investors the full truth by downplaying the DOJ's actions, and denying the truth of the DOJ's claims against ManorCare.

On May 5, 2015, HCP disclosed that it had recorded a non-cash impairment charge of $478 million related to certain of its lease arrangements with ManorCare, and stated that this

5

impairment reduced the carrying value of HCP's ManorCare assets from $6.6 billion to $6.1 billion. However, Defendants continued to falsely assure investors that the DOJ's intervention in the whistleblower lawsuits would not impact ManorCare's profitability, and denied that ManorCare had engaged in any wrongdoing.

Then, on November 3, 2015, HCP disclosed an impairment charge of $27 million related to its approximately 9% equity interest in ManorCare. However, HCP falsely attributed the impairment to admissions trends, and failed to disclose the rampant billing fraud and mounting pressure from the DOJ and whistleblower lawsuits, which put HCP's ManorCare investments at serious risk.

Finally, on February 9, 2016, HCP disclosed that its equity stake in ManorCare had been written down to zero, and that it had taken an $836 million non-cash impairment on its ManorCare lease assets and placed all of its ManorCare real estate assets on a "Watch List." HCP further revealed that HCP could no longer rely on ManorCare to pay its rent, and, as a result, had changed the way it accounted for lease revenue from ManorCare to a "cash only" basis. HCP also disclosed skyrocketing legal costs incurred by ManorCare in defending against the whistleblower and DOJ lawsuits. In response to this news, HCP's stock price declined by 17% in one day, from a close of $33.99 on February 8, 2016 to a close of $28.33 on February 9, 2016.

## ARGUMENT

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A); *Ohio Pub. Emps. Ret. Sys. v. Fannie Mae*, 357 F. Supp. 2d 1027, 1031 (S.D. Ohio 2005). On May 9, 2016, *Boynton Beach Firefighters'*

6

*Pension Fund v. HCP, Inc., et al.*, No. 3:16-cv-01106-JJH, was filed in this District asserting Exchange Act claims against Defendants. The next day, on May 10, 2016, notice of the pendency of the Boynton Beach action was published on *PRNewswire*, alerting investors that the deadline to seek Lead Plaintiff status is July 11, 2016. *See* Declaration of Scott D. Simpkins ("Simpkins Decl.") Ex. A.

The PSLRA permits any member of the Class to move for appointment as Lead Plaintiff within 60 days of the first-published notice of the pendency of the first-filed action asserting substantially similar claims. *See* 15 U.S.C. § 78u-4(a)(3)(A). Mississippi satisfies that requirement through this motion.

**A.    Mississippi Should Be Appointed Lead Plaintiff**

Mississippi respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03 CV 2166, 2004 WL 3314943, at *2 (N.D. Ohio May 12, 2004) (discussing PSLRA requirements in appointing lead plaintiff); *Fannie Mae*, 357 F. Supp. 2d at 1032 (same); *Pio v. Gen. Motors Co.*, No. 14-11191, 2014 WL 5421230, at *2 (E.D. Mich. Oct. 24, 2014) (same).

**1. Mississippi Has The Largest Financial Interest In The Relief Sought By The Class**

Mississippi should be appointed Lead Plaintiff because it has the largest financial interest in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). As demonstrated herein, Mississippi sustained total losses of approximately $2 million as calculated on a first-in,

7

first-out ("FIFO") basis from its Class Period transactions in HCP common stock. *See* Simpkins Decl., Exs. B & C.² To the best of Mississippi's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation. Accordingly, Mississippi has the largest financial interest of any qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 2. Mississippi Otherwise Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Mississippi otherwise satisfies the adequacy and typicality requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, the movant need only make "a prima facie showing that they meet the typicality and adequacy prerequisites of Rule 23." *Fannie Mae*, 357 F. Supp. 2d at 1034 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 263-64 (3d Cir. 2001)); *see also Goodyear Tire*, 2004 WL 3314943, at *6 (courts focus on typicality and adequacy in deciding which investor to appoint as lead plaintiff) (collecting cases); *Gen. Motors*, 2014 WL 5421230, at *3 (same) (citing *Goodyear Tire*, 2004 WL 3314943, at *6). Here, Mississippi unquestionably satisfies both requirements.

Mississippi's claims are typical of the claims of the other purchasers of HCP common stock. Typicality is satisfied when the Lead Plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory." *Goodyear Tire*, 2004 WL 3314943, at *6 (quoting *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)); *Fannie Mae*, 357 F. Supp. 2d at 1034 (same); *Gen. Motors*, 2014 WL 5421230, at *4 (same). Here, Mississippi and all other Class members' claims arise from the same course of conduct and their legal arguments to prove

---

² Mississippi suffered a loss of approximately $1.5 million as calculated on a last-in, first-out ("LIFO") basis. *See* Simpkins Decl., Ex. C.

Defendants' liability are nearly identical. Indeed, like all other Class members, Mississippi: (1) purchased HCP common stock during the Class Period; (2) at prices artificially inflated by Defendants' false and misleading statements or omissions; and (3) was damaged thereby. *See Goodyear Tire*, 2004 WL 3314943, at *6 (typicality satisfied where lead plaintiff's "claims deal with the same issues that pertain to the claims of the other class members. Namely, these issues are (1) whether Goodyear issued false and misleading statements during the Class Period, (2) whether Defendants acted knowingly and/or with deliberate recklessness in issuing these allegedly false and misleading statements, (3) whether the market price of Goodyear stock was artificially inflated during the Class Period because of Defendants' allegedly wrongful conduct, and (4) whether the members of the class have sustained damages, and the amount of such damages."); *Fannie Mae*, 357 F. Supp. 2d at 1034 (finding allegations under Section 10(b) and Rule 10b-5 "appear to arise out of the same course of conduct or series of events as alleged by other members of the purported class. . . ."). As such, Mississippi is a typical Class representative.

Mississippi likewise satisfies Rule 23's adequacy requirement. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has set forth two criteria for determining adequacy: (1) the class representative must have common interests with those unnamed class members; and (2) it must appear that the class representative will vigorously prosecute the action with the assistance of qualified counsel. *See Am. Med.*, 75 F.3d at 1083. Mississippi satisfies these elements because its substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class' claims and because Mississippi's interests are perfectly aligned with those of other Class members and are not antagonistic in any way. *See Goodyear Tire*, 2004 WL

9

3314943, at *7 (adequacy satisfied where both lead plaintiff "and the other class members seek to recover their losses in connection with Defendants' alleged conduct" and "[t]here is nothing to indicate that Capital Invest, as the class representative, would not vigorously prosecute the interests of the class."). Likewise, Mississippi is a "well-grounded and sophisticated institutional investor[] that can commit substantial resources to this litigation." *Fannie Mae*, 357 F. Supp. 2d at 1035. Finally, there are no facts that suggest that Mississippi has any actual or potential conflict of interest or other interest that is antagonistic to any other Class members. In fact, S. Martin Millette, III, Executive Counsel in the Office of the Attorney General and litigation counsel to Mississippi, on behalf of Mississippi, is submitting a Certification affirming Mississippi's understanding and acceptance of the duties and responsibilities owed to other class members through its commitment to "serve as a lead plaintiff and representative party" and monitor the prosecution of this action in the best interests of the Class if appointed Lead Plaintiff in this action. Simpkins Decl., Ex. B ¶3.

Mississippi is well aware of the Lead Plaintiff's obligations under the PSLRA to oversee and supervise the litigation separate and apart from counsel, and has extensive experience in successfully serving as Lead Plaintiff in actions prosecuted under the PSLRA. Indeed, Mississippi has achieved excellent results for investors while serving as a Lead Plaintiff. *See, e.g.*, *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. 08-cv-0397-DMC-JAD (D.N.J.) (Mississippi, serving as a lead plaintiff, recovered $473 million for investors); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, No. 08-cv-10841-JSR-JLC (S.D.N.Y.) (Mississippi, serving as a lead plaintiff, recovered $315 million for investors); *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 08-cv-1713-PKC-WDW (E.D.N.Y.) (Mississippi, serving as a lead plaintiff, recovered $280 million for investors).

Further, Mississippi is the very sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA – a sophisticated institutional investor with a substantial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Fannie Mae*, 357 F. Supp. 2d at 1035 (recognizing the "PSLRA's expressed preference" for institutional investors serving as Lead Plaintiffs); *Steiner v. Frankino*, No. 1:98-CV-264, 1998 WL 34309018, at *4 (N.D. Ohio July 16, 1998) ("In enacting the PSLRA, Congress … wanted to vest control [of securities litigation] with large investors.") (citation omitted).

Finally, Mississippi has demonstrated its adequacy through its selection of Bernstein Litowitz and Barrack Rodos as Lead Counsel to represent the Class in this action. As discussed more fully below, Bernstein Litowitz and Barrack Rodos are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated an ability to jointly prosecute complex securities class action litigation effectively.

**B.**     **The Court Should Approve Mississippi's Selection Of Lead Counsel**

The Court should approve Mississippi's selection of Bernstein Litowitz and Barrack Rodos to serve as Lead Counsel on behalf of the Class. Pursuant to the PSLRA, a movant shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent, and the Court should not disturb the Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also Fannie Mae*, 357 F. Supp. 2d at 1034 ("The district court must approve the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the

class.") (internal citations and quotations omitted). Here, Mississippi retained Bernstein Litowitz and Barrack Rodos as proposed Lead Counsel to represent the Class.

Bernstein Litowitz and Barrack Rodos have extensive experience successfully litigating securities class actions on behalf of injured investors and have a long history of working together in the prosecution of such actions and obtaining landmark results for Class members in those cases. For example, Bernstein Litowitz and Barrack Rodos served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, in which they achieved settlements totaling over $6.1 billion for the Class. The Honorable Denise Cote described the services provided by Lead Counsel as follows:

> The quality of the representation given by Lead Counsel is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative. Its skill has matched that of able and well-funded defense counsel. It has behaved professionally and has taken care not to burden the Court or other parties with needless disputes. Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions. It has cooperated with other counsel in ways that resound to the benefit of the class and those investors who have opted out of the class. The submissions of Lead Counsel to the Court have been written with care and have repeatedly been of great assistance.
>
> In sum, the quality of representation that Lead Counsel has provided to the class has been superb…. Lead Counsel has performed a valuable public service in prosecuting this action with vigor and skill.

*In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV. 3288 (DLC), 2004 WL 2591402, *18, 20 (S.D.N.Y. Nov. 12, 2004).

The two firms also served successfully as co-lead counsel in, among other securities cases, *In re Cendant Corp. Litigation*, No. 98-cv-1664-WHW (D.N.J.) (settlements totaling over $3.2 billion, the largest in the Third Circuit and the largest amount ever against an outside accounting firm in a securities class action, plus significant corporate governance changes); *In re McKesson HBOC, Inc. Securities Litigation*, No. 99-cv-20743 (N.D. Cal.) (settlements totaling

$1.0425 billion, the largest recovery in a securities class action in California); *In re Mills Corporation Securities Litigation*, No. 06-cv-00077-LO-TRJ (E.D. Va.) (settlements totaling over $200 million, one of the largest recoveries in a securities class case in Virginia); and *In re DaimlerChrysler Securities Litigation*, No. 00-cv-0993-JJF (D. Del.) (settlement of $300 million for the class, the largest securities class action recovery in Delaware).

Further, as shown in the two firms' resumes, attached to the Simpkins Decl. as Exhibits D and E, the two firms have achieved significant recoveries in many other cases for Class members, have demonstrated the ability to take cases successfully to trial, and have been instrumental in helping to develop the law in the securities class action field. Thus, there can be no question that Mississippi has selected counsel that is highly qualified to vigorously prosecute the litigation.

## CONCLUSION

For the reasons discussed above, Mississippi respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B); (2) approve its selection of Bernstein Litowitz and Barrack Rodos as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: July 11, 2016                    Respectfully Submitted,

/s/ *Scott D. Simpkins*
John R. Climaco (0011456)
Scott D. Simpkins (0066775)
**CLIMACO WILCOX PECA TARANTINO & GAROFOLI CO., LPA**
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com

sdsimp@climacolaw.com

*Local Counsel for Proposed Lead Plaintiff*
*Public Employees' Retirement System of Mississippi*

Gerald H. Silk *(admitted pro hac vice)*
Avi Josefson *(admitted pro hac vice)*
Rebecca E. Boon *(admitted pro hac vice)*
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
rebecca.boon@blbglaw.com


Jeffrey W. Golan
Chad A. Carder
Julie B. Palley
**BARRACK, RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jgolan@barrack.com
ccarder@barrack.com
jpalley@barrack.com

*Counsel for Proposed Lead Plaintiff*
*Public Employees' Retirement System of Mississippi*
*and Proposed Lead Counsel for the Class*

14

**CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically this 11th day of July 2016.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Scott D. Simpkins
John R. Climaco (0011456)
Scott D. Simpkins (0066775)
**CLIMACO WILCOX PECA TARANTINO & GAROFOLI CO., LPA**
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com
sdsimp@climacolaw.com

*Local Counsel for Proposed Lead Plaintiff*
*Public Employees' Retirement System of Mississippi*