**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| BOYNTON BEACH FIREFIGHTERS' PENSION FUND on behalf of itself and all others similarly situated, | No. 3:16-cv-01106-JJH |
| Plaintiff, | |
| v. | |
| HCP, INC.; HCR MANORCARE, INC.; LAURALEE MARTIN; TIMOTHY SCHOEN; PAUL A. ORMOND; and STEVEN M. CAVANAUGH, | |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND IN OPPOSITION <u>TO THE COMPETING MOTION</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ....................................................................................................................... 3

      A.     Mississippi Has The Largest Financial Interest ..................................................... 3

      B.     Mississippi is Perfectly Typical and Adequate to Represent the Class ................. 8

      C.     Société Générale And Birmingham Are Inadequate And Atypical ...................... 9

           1.     Société Générale Lacks Article III Standing ............................................... 9

           2.     Société Générale And Birmingham Retained Conflicted Counsel ........... 13

CONCLUSION ................................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Baas v. Dollar Tree Stores, Inc.*,
    2008 WL 906496 (N.D. Cal. Apr. 1, 2008) ...........................................................................15

*Bacon v. Honda of Am. Mfg., Inc.*,
    205 F.R.D. 466 (S.D. Ohio 2001) ......................................................................................15

*Baydale v. Am. Express Co.*,
    2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009) .....................................................................11

*Burke v. Ruttenberg*,
    102 F. Supp. 2d 1280 (N.D. Ala. 2000) ..............................................................................5

*In re Cendant Corp. Sec. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .............................................................................................13

*Cincinnati Bell v. Anixter Bros., Inc.*,
    1994 WL 1877173 (S.D. Ohio June 27, 1994) ..................................................................14

*Cliffs Sales Co. v. Am. S.S. Co.*,
    2007 WL 2907323 (N.D. Ohio Oct. 4, 2007) ....................................................................14

*Eichenholtz v. VeriFone Holdings, Inc.*,
    2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...................................................................7

*Faig v. Bioscrip, Inc.*,
    2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ...................................................................3

*Fischler v. AmSouth Bancorporation*,
    1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ......................................................................15

*Frias v. Dendreon Corp.*,
    835 F. Supp. 2d 1067 (W.D. Wash. 2011)..........................................................................7

*Friedman v. Quest Energy Partners LP*,
    261 F.R.D. 607 (W.D. Okla. 2009).............................................................................4, 9, 11

*GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*,
    618 F.3d 204 (2d Cir. 2010).............................................................................................14

*Honeywell Int'l Inc. v. Philips Lumileds Lighting Co.*,
    2009 WL 256831 (E.D. Tex. Jan. 6, 2009).......................................................................14

*In re IMAX Sec. Litig.*,
    2009 WL 1905033 (S.D.N.Y. June 29, 2009) ...................................................................12

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*,
    2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015) ..........................................................................8

*Kurczi v. Eli Lilly & Co.*,
    160 F.R.D. 667 (N.D. Ohio 1995) ...........................................................................................13

*Marcus v. J.C. Penney Co.*,
    2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ...............................................................11, 12

*In re Netflix, Inc., Sec. Litig.*,
    2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) .........................................................................11

*In re Northfield Labs., Inc. Sec. Litig.*,
    267 F.R.D. 536 (N.D. Ill. 2010)..................................................................................................6

*In re Peregrine Sys., Inc. Sec. Litig.*,
    2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ...................................................................5, 10

*S. Ferry LP No. 2 v. Killinger*,
    271 F.R.D. 653 (W.D. Wash. 2011) ........................................................................................12

*In re SLM Corp. Sec. Litig.*,
    258 F.R.D. 112 (S.D.N.Y. 2009) .............................................................................................12

*Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*,
    2012 WL 3638629 (D.N.J. Aug. 22, 2012) .............................................................................11

*In re Texlon Corp. Sec. Litig.*,
    67 F. Supp. 2d 803 (N.D. Ohio 1999)......................................................................................11

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008)..........................................................................................9, 10, 12

**Statutes**

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) ....................................................................................... *passim*

**Other Authorities**

Ohio R. Prof. Conduct 1.7 ......................................................................................................13

## PRELIMINARY STATEMENT

Mississippi should be appointed Lead Plaintiff because it is the "most adequate plaintiff" and has the "largest financial interest" in the HCP securities litigation under the PSLRA.  15 U.S.C.  §  78u-4(a)(3)(B)(iii)(I).[1]  Two other movants filed competing motions and, as demonstrated below, neither of them approach the financial interest asserted by Mississippi.

| Movant | FIFO loss | LIFO loss |
|---|---|---|
| **Mississippi** | **$1,963,182** | **$1,515,763** |
| City of Birmingham Retirement and Relief System ("Birmingham") | $315,169 | $315,169 |
| Société Générale Securities Services GmbH ("Société Générale") | $0 | $0 |
| **Birmingham and Société Générale** | **$315,169** | **$315,169** |
| **Albert J. Belle ("Belle")[2]** | **$154,633** | **$154,633** |

When considering the actual financial interest of each of the movants, Mississippi has the greatest financial interest and is the presumptive Lead Plaintiff under the PSLRA.  Société Générale and Birmingham claim that they incurred a collective loss of $1.9 million.  *See* ECF No. 20-1 at 4.  But that loss is based on transactions of three unrelated funds—REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2—whose relationship to Société Générale is not explained.  It is not a loss incurred by Société Générale itself.  Based on the actions of Société Générale in prior litigation, where it submitted evidence that it had received assignments of claims with its Lead Plaintiff motion, Société Générale clearly knows the proper legal process to secure standing.  Because it failed to do so here, it is precluded from curing the defect now.

The motion of Société Générale and Birmingham suffers from deficiencies which raise important questions as to whether Société Générale and Birmingham can appropriately represent

---

[1] All capitalized terms are defined in Mississippi's moving brief, unless otherwise indicated.  *See* ECF No. 23-1.

[2] Belle filed a Notice of Non-Opposition and recognized that he "does not possess the 'largest financial interest in the relief sought by the class.'"  ECF No. 36.

the interests of the Class.  These deficiencies include the following:

- Société Générale is not a member of the Class because it purchased no HCP stock, incurred no loss, and lacks Article III standing to assert the claims at issue;

- The losses on which Société Générale bases its motion were incurred by three distinct, opaque entities, which appear to be investment vehicles based in Germany;

- At least one of those German funds is, in turn, controlled by three other funds, which are controlled by a distinct "Special Investor" in Germany, none of which are disclosed in Société Générale's motion.  It is unclear which of these entities, if any, suffered the economic harm from HCP's alleged fraud;

- These funds did not file a Lead Plaintiff motion, did not provide the required PSLRA certification, and offered no information about themselves despite their complexity;

- Although the relationship between Société Générale and these entities is never described in Société Générale's motion, Société Générale appears merely to provide some ministerial back-office services on behalf of those entities;

- A court previously rejected a Lead Plaintiff motion filed by another branch of Société Générale—Société Générale Asset Management International, Ltd.—specifically because it lacked standing where its motion was based on investments by other entities;

- Demonstrating that Société Générale lacks standing here, in other PSLRA cases, Société Générale and its affiliate (Société Générale Deutschland) have obtained express assignments from the same German investment funds whose losses are cited in the present motion of Société Générale and Birmingham, in order to establish standing;

- Here, Société Générale failed to provide evidence that it received a valid and timely assignment of claims from REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2—a defect that cannot be remedied now given that the PSLRA's 60-day deadline for filing a Lead Plaintiff motion has lapsed;

- Société Générale submitted a sworn declaration that incorrectly states that Société Générale itself purchased HCP shares and incurred losses, yet its sworn certification makes clear that Société Générale itself purchased no HCP shares and incurred no losses; and

- Three of the law firms retained by Société Générale and Birmingham suffer from conflicts of interest because they are currently prosecuting claims against Société Générale's parent company and affiliates.

In light of these numerous issues, Société Générale and Birmingham are precluded from

serving as Lead Plaintiff.  Allowing them to do so would prejudice the Class at all phases of the

litigation and divert the focus from Defendants' misconduct.  In contrast, Mississippi is a

transparent and sophisticated institutional investor with a real financial interest in this case, and is experienced in prosecuting complex securities class actions, having served as Lead Plaintiff in nearly two dozen cases that resulted in total recoveries of nearly $5 billion. Accordingly, Mississippi should be appointed Lead Plaintiff and its motion should otherwise be granted.

## ARGUMENT

The PSLRA creates a presumption that the Lead Plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the [typicality and adequacy] requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Once this presumption is triggered, it can only be rebutted upon "proof" that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

### A. Mississippi Has The Largest Financial Interest

As demonstrated in the table above, with a loss of nearly $2 million as calculated under FIFO and over $1.5 million as calculated under LIFO, Mississippi has the largest financial interest in the relief sought by the Class. *See Faig v. Bioscrip, Inc.*, 2013 WL 6705045, at *2 (S.D.N.Y. Dec. 19, 2013) ("It is well settled that '[f]inancial loss, the last factor, is the most important element of the test.") (citation omitted). Because Mississippi has the largest financial interest and made a *prima facie* showing of its typicality and adequacy, it is the presumptive "most adequate plaintiff."

Even if the losses claimed by Société Générale and Birmingham are credited, Mississippi's financial interest is larger than their combined losses when measured on a FIFO basis. But a review of the documents submitted by Société Générale and Birmingham in support of their motion makes clear that Société Générale itself has no financial interest in this case, and there is no basis on which to aggregate the losses of Birmingham together with the losses incurred by the three unrelated German investment funds whose transactions are included as the

3

basis for Société Générale's motion.

While Société Générale claims a loss of approximately $1.6 million, Société Générale acknowledges that it purchased **no** HCP securities. *See* ECF Nos. 21-2 & 21-3. Rather, the losses cited by Société Générale were incurred by three German funds that appear to be unrelated to Société Générale: REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2. *See* ECF No. 21-2. Indeed, it appears that Société Générale does not invest in stock; but rather, it simply provides "clearing services, custody and trustee services, retail custody services," to entities. Declaration of Scott D. Simpkins ("Simpkins Decl."), Ex. A.

Because Société Générale did not purchase HCP stock, it incurred no losses as a result of the alleged fraud. It is therefore not a member of the Class, and lacks Article III standing to prosecute the claims asserted in this Action. *See Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 612 (W.D. Okla. 2009). Société Générale has not explained its relationship to REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2, or given any explanation why transactions by those funds in HCP stock give Société Générale any financial interest in the litigation. Because any recovery in this Action would flow to those funds rather than Société Générale, Société Générale has no financial interest in the relief sought by the Class.

Moreover, it is not permissible for Société Générale to aggregate the losses incurred by REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2 and then simply add in the losses incurred by Birmingham in order to increase their financial interest in this litigation. Société Générale and Birmingham do not provide the Court with sufficient information about their relationship with these three funds to allow their losses to be aggregated. Such a failure is particularly concerning here because REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2 are opaque entities established under German law, and Société Générale and Birmingham

provide no information regarding their identities, structure, or leadership.  None of those funds submitted any information evidencing their interest in the case, and none certified any of the information that the PSLRA requires.  This is not the first time that a Société Générale entity failed to provide "the court with any evidence regarding the identity of its clients, their knowledge of or consent to Societe Generale's lawsuit, or of any cohesive relationship between the clients."  *In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at *14 (S.D. Cal. Oct. 11, 2002) (denying Société Générale's Lead Plaintiff motion for lack of standing).  The PSLRA does not permit REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2 to circumvent their certification requirements under the PSLRA by having Société Générale file a Lead Plaintiff motion based upon the transactions of the funds.  *See Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1319 (N.D. Ala. 2000) ("Only those plaintiffs who satisfy the certification requirement . . . can serve as lead plaintiff.").

Raising further concerns regarding Société Générale's and Birmingham's motion is the fact that Société Générale and Birmingham did not explain how or why they came together in this case.  The only information they did provide, a declaration signed only by representatives of Société Générale and Birmingham and not the underlying German investment funds, raises far more questions than it answers.  *See* ECF No. 21-4.  The declaration does not even mention REIT Nordamerika 1, PT-Master, or Aktien Nordamerika 2.

Critically, the declaration is inconsistent with Société Générale's PSLRA certification in that the declaration states that "Société Générale purchased a significant number of shares of HCP common stock during the Class Period and suffered substantial losses as a result of the violations alleged in this Action." ECF No. 21-4 ¶2.  On the other hand, Société Générale's sworn certification makes clear that Société Générale itself did not purchase any HCP stock

5

during the Class Period, and that all of the shares on which Société Générale bases its motion were purchased by REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2.  *See* ECF No. 21-2 ¶8.  The declaration goes on to state that Birmingham determined to work together with Société Générale because it wants to work "with another institutional investor which suffered substantial losses from its investment in HCP."  ECF No. 21-4 ¶3.  But Société Générale itself suffered no such losses, and this calls into question what Birmingham knew about Société Générale's interest in this litigation when it agreed to work with Société Générale.  The inconsistencies in that declaration raise serious questions about Société Générale's adequacy.  *See In re Northfield Labs., Inc. Sec. Litig.*, 267 F.R.D. 536, 543 (N.D. Ill. 2010) (accuracy of class representative's testimony implicates adequacy).

Moreover, the omission of any reference to REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2 in the declaration leaves the Court and the Class with no explanation of what these entities are or what role they would play in this case.  Submissions by Société Générale in other cases, however, highlight the complexity of these German funds, and raise serious questions about who would control this case.  REIT Nordamerika 1 appears to be controlled by several "Funds of Funds" known only as "Capri, Melba and Bali."  Those "Funds of Funds" appear to be controlled by a "Special Investor" in Germany, "Kirchliche Zusatzversorgungskasse des Verbandes der Diözesen Deutschlands AdöR."  In *French v. CBL & Associates Properties, Inc.*, No. 16-cv-00165 (E.D. Tenn.) ("*CBL*"), where Société Générale obtained an assignment of the claims of REIT Nordamerika 1, that assignment was actually executed by Kirchliche Zusatzversorgungskasse des Verbandes der Diözesen Deutschlands AdöR as "Special Investor" of the "Funds of Funds Capri, Melba and Bali" and not by REIT Nordamerika 1.  Simpkins Decl., Ex. B.

Here, the complicated relationships between Société Générale, the three German funds, and their ultimate investors raise serious questions as to what entity has an actual financial interest in the case and who will be making the decisions for the Class. Clearly, Société Générale has no financial interest. Neither, it appears, does REIT Nordamerika 1, whose losses flowed to its investors, Capri, Melba and Bali. Or perhaps those losses flowed to the "Special Investor" in those funds, Kirchliche Zusatzversorgungskasse des Verbandes der Diözesen Deutschlands AdöR. With so many parties involved, who will be making the decisions in this case, and who is actually interested in the outcome? There is no way for the Court (or the Class) to know.

Put simply, the declaration of Société Générale and Birmingham is composed of a mix of inconsistent and conclusory statements as well as generalizations that provide no insight into the members of the group, the formation of the group, or how the group would oversee counsel and prosecute this case in the best interest of the Class. This does not satisfy the standards courts have created when determining whether unrelated entities constitute a "group of persons" under the PSLRA and can serve together as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see, e.g.*, *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1074 (W.D. Wash. 2011) (rejecting joint declaration that contained "myriad conclusory statements and generalizations"); *Eichenholtz v. VeriFone Holdings, Inc.*, 2008 WL 3925289, at *9 (N.D. Cal. Aug. 22, 2008) ("Simply stated, this conclusory declaration [regarding the adequacy of an unrelated group of investors as lead plaintiff] has little or no substance").

Beyond the fact that Société Générale's sworn certification is at odds with its own sworn declaration, those documents raise additional questions about the attorneys representing Société Générale and Birmingham. The declaration states that Société Générale and Birmingham

7

selected two firms, Robbins Geller and Motley Rice, to represent them in this matter. *See* ECF No. 21-4 ¶6. But Société Générale's certification does not mention either of these firms, and instead states that Société Générale in fact retained another law firm—Sturman LLC—as counsel in this matter. *See* ECF No. 21-2 ¶9.

These deficiencies suggest that Société Générale, REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2 are not adequately overseeing counsel or the litigation, and that the transactions of the three German funds were grafted onto Société Générale (which never invested in HCP) and then cobbled together with Birmingham by the three law firms involved perhaps to inflate the financial interest in an attempt to secure control of this litigation. This is the exact type of conduct that the PSLRA was enacted to avoid. *See Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, 2015 WL 7018024, at *3-4 (S.D.N.Y. Nov. 12, 2015) (expressing concerns regarding lawyer-driven litigation).

**B.** **Mississippi is Perfectly Typical and Adequate to Represent the Class**

In addition to possessing the largest financial interest in the relief sought by the Class, Mississippi also satisfies the typicality and adequacy requirements of Rule 23. *See* ECF No. 23-1 at 8-11. To overcome the presumption entitling Mississippi to appointment as Lead Plaintiff, the PSLRA requires "proof" that it is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists. Indeed, Mississippi is precisely the type of sophisticated institutional investor that Congress sought to place in charge of securities class actions and it has successfully recovered nearly $5 billion for investors as Lead Plaintiff in cases under the PSLRA. *See* ECF No. 23-1 at 10-11. Mississippi's management of securities class actions in which it serves as Lead Plaintiff is overseen by experienced senior attorneys serving in the Office of the Mississippi Attorney General. *See, e.g.*, ECF No. 23-4 (Mississippi's PSLRA Certification executed by S. Martin Millette, III, Executive Counsel in the Office of the Mississippi Attorney General). One of

Mississippi's chosen counsel, Bernstein Litowitz, developed and filed the first action against HCP and ManorCare.  Accordingly, the Court should appoint Mississippi as the Lead Plaintiff.

## C.  Société Générale And Birmingham Are Inadequate And Atypical

In contrast to Mississippi, several deficiencies discussed below preclude the appointment of Société Générale and Birmingham.

### 1.  Société Générale Lacks Article III Standing

Société Générale's lack of standing renders it an inadequate and atypical Class representative.  "[P]laintiffs in a class action 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent . . . [and] [u]nless [they] can thus demonstrate the requisite case or controversy between themselves personally and [defendants], none may seek relief on behalf of himself or any other member of the class.'" *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 n.5 (2d Cir. 2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

To satisfy this "bedrock" requirement of Article III, Société Générale must demonstrate that it suffered an "injury-in-fact," meaning that it has "legal title to, or a proprietary interest in, the claim." *Huff*, 549 F.3d at 108 (citing *Sprint Commnc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 287-88 (2008)).  However, Société Générale's certification reveals that it cannot meet this standard.  Société Générale's certification demonstrates that REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2—three distinct entities—purchased HCP stock.  *See* ECF No. 21-2.  That certification identifies no HCP shares purchased directly by Société Générale.  *See id.* Société Générale has not provided any evidence that it, as opposed to the German funds, purchased any HCP stock, has any interest in the claims, or suffered any injury at all.  *See Quest Energy*, 261 F.R.D. at 612 (movant "must submit evidence that its clients have 'transferred

9

ownership of, or title to, their claims to [it]'"); *Huff*, 549 F.3d at 109.  Société Générale's inability to make such a showing demonstrates that it suffered no injury and "lacks constitutional standing to bring suit for violations of the federal securities laws in its own name." *Huff*, 549 F.3d at 111.

Lack of standing is the exact same reason one court found another Société Générale branch (Société Générale Asset Management) inadequate to serve as Lead Plaintiff.  Specifically, in *Peregrine*, Judge Jones ruled that Société Générale Asset Management lacked standing and was "not an appropriate lead plaintiff as contemplated by the PSLRA" because, like here, its motion was based on investments made by its clients, from which it did not obtain assignments. *Peregrine*, 2002 WL 32769239, at *14

Société Générale has itself acknowledged that it lacks standing to prosecute the claims of these German investment funds (including REIT Nordamerika 1) without an assignment.  In *CBL*, Société Générale filed a Lead Plaintiff motion and submitted evidence of an assignment from REIT Nordamerika 1 to Société Générale that "assign[ed] to [Société Générale] any and all claims of the Fund REIT Nordamerika 1 against defendants in the lawsuit."  Simpkins Decl., Ex. B.[3]  Yet another Société Générale branch (Société Générale Deutschland) secured assignments of claims to obtain standing in *City of Brockton Retirement System v. Avon Products, Inc.*, No. 11-cv-4665 (S.D.N.Y.), where its Lead Plaintiff motion was based on the investments of unrelated entities (including PT-Master, whose investments are cited in Société Générale's motion here). *See* Simpkins Decl., Ex. C.

The assignments from REIT Nordamerika 1 to Société Générale in *CBL* and from PT-

---

[3] There are serious questions as to the validity of the purported assignment in *CBL* given the numerous questions regarding the complex structure of REIT Nordamerika 1 and questions concerning the identities of the parties purporting to assign claims on its behalf.

Master to Société Générale Deutschland in *Avon* are strong evidence that Société Générale requires assignments to secure standing to serve as Lead Plaintiff. No such assignments have been evidenced, and any *ex post facto* attempt by Société Générale to cure its standing should be rejected as inconsistent with the PSLRA, which mandates that all Lead Plaintiff motions must be filed by the statutorily imposed deadline which expired on July 11, 2016. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). In *CBL,* Société Générale stressed that it obtained the assignment "before filing this motion for appointment as Lead Plaintiff," demonstrating the necessity of presenting the assignment to the Court prior to the PSLRA deadline. Simpkins Decl., Ex. D at 8 n.2.[4] As of the strict 60-day deadline in this case, Société Générale failed to evidence its standing to prosecute claims on behalf of HCP investors. As such, whether or not Société Générale received an assignment before filing its Lead Plaintiff motion here is irrelevant because it chose not to present the assignment with its motion (if it in fact obtained such an assignment).

Given Société Générale's lack of Article III standing, it cannot serve as Lead Plaintiff. Allowing it to do so would prejudice the Class at all phases of the litigation, and there is no reason to burden the Class here with such "a needless litigation sideshow." *Baydale v. Am. Express Co.*, 2009 WL 2603140, at *2-3 (S.D.N.Y. Aug. 14, 2009) (rejecting Lead Plaintiff application of foreign investment fund with questionable standing). This is especially true in this case where Mississippi—a sophisticated institution that has recovered nearly $5 billion for

---

[4] *See Quest Energy*, 261 F.R.D. at 612 ("due to the strict [60 day] time limit[] set forth in the PSLRA for filing motions for appointment as lead plaintiff, the Court finds that the assignments of claims which occurred after the filing of the motion to be appointed lead plaintiff cannot be considered"); *Marcus v. J.C. Penney Co.*, 2014 WL 11394911, at *6 (E.D. Tex. Feb. 28, 2014) (rejecting movant who failed to establish standing by the 60-day PSLRA deadline); *In re Texlon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions" regarding 60-day deadline).

investors—claims the largest financial interest and is perfectly typical and adequate.[5]

Numerous courts throughout the country have rejected Lead Plaintiff movants that suffered from standing infirmities that are less serious than Société Générale's.  *See Huff*, 549 F.3d at 107, 111; *S. Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653, 659 (W.D. Wash. 2011) (German investment fund atypical given that its "standing presents a unique [] issue that could [] prejudice the class").  This is true even when the party seeking to serve as Lead Plaintiff acted as an investment advisor, and made the investment decisions for clients it represented.[6]  Here, Société Générale does not claim to be involved in the investment decisions of the three funds. The chart below demonstrates the logistical and standing issues presented by Société Générale's and Birmingham's motion.

---

[5] *See Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*, 2012 WL 3638629, at *13 (D.N.J. Aug. 22, 2012) ("The Court must ensure that the lead plaintiff will not prejudice the class by subjecting the class to the delay, expense, and uncertainty of litigating unique defenses"); *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) (rejecting movant whose standing would force the class to litigate unique issues).

[6] *See J.C. Penney*, 2014 WL 11394911, at *5-6 (rejecting movant because its questionable standing subjects it to "unique defenses and flaws that render it inadequate"); *In re IMAX Sec. Litig.*, 2009 WL 1905033, at *2-3 (S.D.N.Y. June 29, 2009) (investment advisor that brought claims on behalf of clients inadequate); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 114 (S.D.N.Y. 2009) (same).



## 2. Société Générale And Birmingham Retained Conflicted Counsel

One of the most important responsibilities that the PSLRA imposes on a Lead Plaintiff is to select and retain counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). When a movant selects law firms with a conflict of interest, that conflict indicates that the movant is not capable of adequately representing the Class. *See In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) (a court might conclude that a movant "could not surmount the threshold adequacy inquiry if it . . . intended to select as lead counsel a firm that was plainly incapable of undertaking the representation"). Under the Ohio and Model Rules of Professional Conduct, a law firm suffers from a conflict when it represents a client in one matter, while suing that party in another. *See* Ohio R. Prof. Conduct 1.7 ("lawyer's acceptance or continuation of representation of a client creates a conflict of interest . . . [when] the representation of that client will be directly adverse to another current client"). Such conflicts are particularly troublesome in the context of class actions because they compromise counsel's duty of loyalty to the Class. *See Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995) (finding counsel inadequate

because of the risk that it would "trade off the interests of certain of its clients to the detriment of other clients").

Here, three of the firms that Société Générale and Birmingham retained are currently prosecuting claims against Société Générale's parent for violations of the federal securities and other laws.  Robbins Geller is representing plaintiffs in at least three actions in which Société Générale's parent or branch is a defendant.  *See Glenview Capital Partners, L.P. v. SunEdison, Inc.*, No. 16-cv-2264-JCS (N.D. Cal.) (Robbins Geller representing plaintiff in securities fraud action against Société Générale parent); *Okla. Firefighters Pension & Ret. Sys. v. SunEdison, Inc.*, No. 16-cv-2267 (N.D. Cal.) (Robbins Geller representing plaintiff in securities fraud action against SG Americas Securities, LLC); *Iron Workers Mid-South Pension Fund v. TerraForm Global, Inc.*, No. 16-cv-2270 (N.D. Cal.) (same).  Motley Rice and Sturman LLC represent plaintiffs in at least one action in which the firms are adverse to Société Générale's parent.  *See In re Libor-Based Fin. Instruments Antitrust Litig.*, 11-cv-2613-NRB (S.D.N.Y.).  These firms cannot represent Société Générale in this case while prosecuting four separate cases against Société Générale's parent or affiliates.  *See GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (finding that concurrent adverse representation is "prima facie improper") (citation omitted); *Honeywell Int'l Inc. v. Philips Lumileds Lighting Co.*, 2009 WL 256831, at *3-4 (E.D. Tex. Jan. 6, 2009) (conflict exists when law firm represents a company's affiliate while suing another affiliate of that same company).  Société Générale's and Birmingham's willingness to retain firms with such conflicts raises questions about their adequacy.

The fact that Robbins Geller, Motley Rice, and Sturman LLC are directly adverse to Société Générale's parent and affiliates (as opposed to Société Générale itself) does not

14

ameliorate the conflict. Courts have held that the bar against concurrent adverse representation extends to matters involving a parent company and its wholly-owned subsidiary. *See Cliffs Sales Co. v. Am. S.S. Co.*, 2007 WL 2907323, at \*3-6 (N.D. Ohio Oct. 4, 2007) (law firm's representation adverse to parent while the subsidiary was a client is a conflict of interest); *Cincinnati Bell v. Anixter Bros., Inc.*, 1994 WL 1877173, at \*3 (S.D. Ohio June 27, 1994) ("We cannot imagine how an attorney can maintain a duty of undivided loyalty to a client, while at the same time zealously attempting to exact millions of dollars of damages from a sister corporation"). Rather than ameliorate the conflict, the fact that a parent-subsidiary relationship is at issue may require the Court to engage in a fact-intensive inquiry into the relationships between Société Générale, its parent, and affiliates. This highlights the conflict because Société Générale's and Birmingham's counsel in this case will become dependent upon the cooperation of Société Générale's parent to produce information to dispute the conflict.

The Class here deserves nothing less than absolute loyalty. Given class counsel's responsibility to represent all absent class members, courts do not "permit even the appearance of divided loyalties," this encompasses "both differing and potentially conflicting interests, not merely instances actually manifesting such conflict." *Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466, 482 (S.D. Ohio 2001) (quoting *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995)). Moreover, Société Générale and Birmingham cannot simply waive the conflict if they are appointed Lead Plaintiff. *See Baas v. Dollar Tree Stores, Inc.*, 2008 WL 906496, at \*4 (N.D. Cal. Apr. 1, 2008).[7]

---

[7] In the event that the Court determines that the present record is insufficient to resolve the questions about Société Générale's standing and conflicts of interest, discovery should be provided so that the Court can fully assess these issues before saddling the Class with a Lead Plaintiff that cannot represent it. The PSLRA explicitly allows for discovery of a Lead Plaintiff movant when there is a reasonable basis for finding that it is incapable of adequately

## CONCLUSION

For the reasons discussed above, Mississippi respectfully requests that the Court appoint

it to serve as Lead Plaintiff and otherwise grant its motion.

Dated: July 28, 2016

Respectfully Submitted,

/s/ *Scott D. Simpkins*

John R. Climaco (0011456)
Scott D. Simpkins (0066775)
**CLIMACO WILCOX PECA TARANTINO
& GAROFOLI CO., LPA**
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com
sdsimp@climacolaw.com

*Local Counsel for Proposed Lead Plaintiff*
*Public Employees' Retirement System of Mississippi*

---

representing the class.   *See* 15 U.S.C. § 78u-4(a)(3)(B)(iv); *see also Fischler v. AmSouth Bancorporation*, 1997 WL 118429, at *3 (M.D. Fla. Feb. 6, 1997) ("uncertainty" or "unanswered questions" about lead plaintiff's ability to represent the class sufficient to allow discovery).

Gerald H. Silk *(admitted pro hac vice)*
Avi Josefson *(admitted pro hac vice)*
Rebecca E. Boon *(admitted pro hac vice)*
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
rebecca.boon@blbglaw.com

Jeffrey W. Golan
Chad A. Carder
Julie B. Palley
**BARRACK, RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jgolan@barrack.com
ccarder@barrack.com
jpalley@barrack.com

*Counsel for Proposed Lead Plaintiff*
*Public Employees' Retirement System of Mississippi*
*and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically this 28th day of July 2016. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Scott D. Simpkins*
John R. Climaco (0011456)
Scott D. Simpkins (0066775)
**CLIMACO WILCOX PECA TARANTINO**
**& GAROFOLI CO., LPA**
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com
sdsimp@climacolaw.com

*Local Counsel for Proposed Lead Plaintiff*
*Public Employees' Retirement System of Mississippi*