**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| BOYNTON BEACH FIREFIGHTERS' PENSION FUND on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HCP, INC.; HCR MANORCARE, INC.; LAURALEE MARTIN; TIMOTHY SCHOEN; PAUL A. ORMOND; and STEVEN M. CAVANAUGH,<br><br>Defendants. | No. 3:16-cv-01106-JJH |

**SUR-REPLY MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI
FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF
LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTION**

**ARGUMENT**

A. **Société Générale Incurred No Loss And Lacks Standing To Represent The Class**

Société Générale's and Birmingham's reply raises more questions than it answers regarding Société Générale's standing, confirms that their prior submissions are marred with misrepresentations and inconsistencies, and exposes exactly how Société Générale's appointment would create a "needless litigation sideshow." *Baydale v. Am. Express Co.*, 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009).[1] The unique defenses and unanswered questions arising from Société Générale's continued inability to establish standing—and the inability to even settle on a theory—threaten to consume this litigation, derail the focus of this case, and prejudice the Class. The simple presence of these risks warrants denial of Société Générale's motion. It would be imprudent to appoint it Lead Plaintiff. *See In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) ("we ask simply whether [movant] is likely to be 'subject to' the unique defense []; we do not have to determine that the defense is likely to succeed").

At every step of the Lead Plaintiff briefing process, Société Générale's strategy has been to hide-the-ball with regard to its ability to establish standing and it has continuously shifted and taken conflicting positions with regard to basic facts and threshold arguments. Specifically, in connection with its Lead Plaintiff motion on July 11, 2016, representatives of Société Générale claimed that it had standing because it "purchased a significant number of shares of HCP common stock . . . and suffered substantial losses as a result of the violations alleged in this Action." ECF No. 21-4 ¶2. Birmingham also specifically represented that it decided to work with Société Générale because Société Générale "suffered substantial losses from its investment in HCP stock." *Id.* ¶3.

---

[1] All capitalized terms are defined in Mississippi's moving, opposition, and reply briefs, unless otherwise indicated. *See* ECF Nos. 23-1, 38, 43.

Société Générale and Birmingham have since conceded that these statements were factually baseless. Critically, neither Société Générale nor Birmingham suggested in their initial motion that Société Générale's standing was based on anything other than its claimed loss, despite the fact that the transactions that served as the basis for Société Générale's motion appear to have been made *not* by Société Générale, but rather, by three distinct German funds named REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2. *See* ECF No. 21-2. Société Générale did not explain what those entities are or what their relationship is to Société Générale.

Société Générale reiterated in its opposition brief submitted on July 28, 2016, that Société Générale itself was the entity that had the "largest financial interest of any movant." ECF No. 37 at 2-3. Again, Société Générale did not claim that any other entity was the actual party in interest or would be involved in its motion; indeed, it failed to advance any other basis for standing other than the claimed loss that Société Générale itself incurred by purchasing HCP stock. *Id.* at 3. Nor did it question Mississippi's typicality or adequacy. *Id.*

Then, on August 5, 2016—after Mississippi argued that Société Générale lacked standing (*see* ECF No. 38 at 9-13)—Société Générale abruptly reversed course and acknowledged that it purchased no HCP stock and incurred *no loss*. *See* ECF No. 43-2. Rather, according to Société Générale, its standing was now based on purported assignments from REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2 that Société Générale procured at least four weeks *before* it filed its initial motion. *See id*. No reason has been given as to why Société Générale withheld the documents from the first two rounds of briefing, or inaccurately claimed that it had a financial interest in this case when it did not. Such tactics are especially troubling here because Société Générale is seeking to represent a class of absent investors, there is no meaningful information publicly available about it (or the meandering chain of eight other entities involved in the

2

assignments), and it was Société Générale's burden to establish standing at the time it filed its motion. *See Marcus v. J.C. Penney Co.*, 2014 WL 11394911, at *6 (E.D. Tex. Feb. 28, 2014) (rejecting movant who failed to establish standing by the 60-day PSLRA deadline).

Moreover, in its reply, Société Générale shifted course yet again and claimed for the first time that the purported assignments it procured are actually ***irrelevant*** (perhaps because the assignments are invalid on their face (*see* ECF No. 43 at 2-6)) and that Société Générale has standing through the so-called "prudential exception[]" to the injury-in-fact requirement. ECF No. 41 at 3-5. The prudential exception is a highly fact-intensive inquiry that requires Société Générale to provide evidence that it has "(1) a close relationship to the injured party" and that there is "(2) a barrier to the injured party's ability to assert its own interests." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008); *Baydale*, 2009 WL 2603140, at *3.

Aside from failing to meet its evidentiary burden, Société Générale's reliance on this "exception" for the first time in its reply brief exemplifies its improper gamesmanship and tactical maneuvering in this case. For instance, while Société Générale now claims that the German funds cannot assert their own interests (ECF No. 41 at 3-5), this argument contradicts Société Générale's contention that the funds already affirmatively acted in this case by assigning their claims to Société Générale and declaring themselves to be bound by the result of this lawsuit. *See* ECF Nos. 42-2, 42-3, 42-4.[2] Alternatively, if Société Générale's newfound claim is true that the funds have no capacity to assign their claims, then the declarations that Société Générale submitted that purport to do just that are in and of themselves misleading. Société Générale cannot have it both ways.

---

[2] The fact that Société Générale obtained the purported assignments one week before it filed its Lead Plaintiff motion strongly suggests that it knew that the prudential exception would not apply here. Société Générale's recent reliance on the prudential exception also conflicts with its actions in prior litigation when it obtained assignments of claims from two of the same funds at issue here to attempt to secure standing. *See* ECF Nos. 38-3, 38-4.

3

Furthermore, Société Générale's claim—never uttered in any of its prior papers—that it is an "investment management company" (ECF No. 41 at 4) flatly contradicts Société Générale's prior assertion that it merely provides "clearing services, custody and trustee services, [and] retail custody services" to other entities. ECF No. 38-2. There is simply no documentary evidence in the record demonstrating that Société Générale has a close enough relationship with these German funds for the prudential exception to apply, and in fact, it appears that it does not. *See id.*

In addition to contradicting each other, Société Générale's standing theories fail for the separate and independent reason that they are based entirely on speculation and not facts. Given the lack of evidence, the Court is unable to sufficiently test Société Générale's ever-evolving theories, or discern who the actual parties in interest are, why Société Générale is involved, or why REIT Nordamerika 1, PT-Master, and Aktien Nordamerika 2 cannot act to protect their own interests. For instance, among other things, Société Générale has failed to submit:

- the formation documents for Société Générale demonstrating that it is an "investment management company." ECF No. 41 at 4;

- the formation documents for Aktien Nordamerika 2, PT-Master, and REIT Nordamerika 1 demonstrating that they are "'joint ownership form' investment funds." *Id.*;

- the "investment management agreement" (or agreements—it is not clear) that purportedly govern Société Générale and the three German funds. ECF Nos. 42-1, 42-3;[3]

- the agreement between Société Générale, the three German funds (or any of the other entities at issue in Société Générale's motion), and the "custodian" of the funds' assets. ECF No. 42-1 ¶5;

- evidence reflecting the relationship between Aktien Nordamerika 2, PT-Master, and REIT Nordamerika 1, and what their relationship is to Société Générale, the three "Funds of Funds," and the two "Special Investors." ECF No. 42-2, 42-3, 42-4;

---

[3] While Société Générale claims in the purported assignments that it "has authority, under its investment management agreement, to join in this Lawsuit, and to act on behalf of the Fund[s]," ECF Nos. 42-2 ¶4, 42-3 ¶4, 42-4 ¶4, there is no information before the Court as to what exactly Société Générale's authority is, if there are any limits to that authority, and if any other entities' authority is required for Société Générale to act on behalf of the funds.

4

- any evidence whatsoever regarding Kirchliche Zusatzversorgungskasse des Verbandes der Diözesen Deutschlands AdöR, Daimler Pension Trust e.V., Capri, Melba, and Bali. *See id.*;

- documents reflecting whether there are any other "Special Investors" in the "Funds of Funds," and whether their authorization is needed for Société Générale to act in this case. *Id.*; and

- evidence demonstrating that Aktien Nordamerika 2, PT-Master, and REIT Nordamerika 1 incurred a loss (as opposed to the custodian that holds the assets or an entirely different entity altogether). *See* ECF Nos. 41 at 4, 42-1 ¶5.

Other than the facially invalid assignments (*see* ECF No. 43 at 2-6), the only information that Société Générale does submit in support of its standing is the declaration of Christoph A. Kern, a professor in Germany. But Kern's opinion is also not based on evidence and simply assumes all facts relating to whether Société Générale is entitled to rely on the prudential exception. Indeed, Kern acknowledges that his legal opinion is based ***solely*** upon "the German Investment Code, German procedural law and general principles of German law and policy" (ECF No. 42-1 ¶¶1, 14), yet he never analyzes the salient facts in this case. Because the application of the prudential exception is a fact-intensive inquiry under U.S. law, Kern's opinion is entitled to no weight. *See Baydale*, 2009 WL 2603140, at *3.[4]

In fact, Kern acknowledges that the articles, by-laws, investment management agreement,

---

[4] Among the new information Société Générale and Birmingham submitted on reply is a declaration from an ethics expert, Deborah Coleman, which fails to adequately address how their counsels' concurrent adverse representation of Société Générale is permissible under the Ohio Rules of Professional Conduct or Rule 23. *See* ECF No. 42-7. Coleman's report deserves no credit because it cherry-picks facts, relies on self-serving assumptions, and ignores the settled law of this District. *See Cliffs Sales Co. v. Am. S.S. Co.*, 2007 WL 2907323, at *3-6 (N.D. Ohio Oct. 4, 2007) (law firm's representation of one client in litigation while adverse to a current client's affiliate in unrelated litigation "was a conflict of interest and a violation of Rule 1.7(a)(1)"). Among other things, Coleman disregards that Société Générale is a wholly owned subsidiary of its parent, its parent has 100% voting control of Société Générale, and Société Générale's CEO and several other employees are also employees of Société Générale's parent. *See* ECF Nos. 38 at 14; 42-8 ¶6. In any event, even if this conflict may not be grounds for disqualification of Société Générale's counsel, Coleman ignores that, under Rule 23, the existence of this conflict creates the "risk that counsel will trade off the interests of certain of its clients to the detriment of other clients." *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679 (N.D. Ohio 1995).

or other similar documents relevant to Société Générale's motion—documents which have not been submitted—could limit the applicability of the German Investment Code (if it applied in the first place) or assignability of claims, or provide for a completely different governing scheme altogether. *See* ECF No. 42-1 ¶10. More broadly, Kern's opinion is highly questionable given that it appears that he: did not review a single document from any entity in the Société Générale complex; never spoke to any employees or representatives of Société Générale, REIT Nordamerika 1, PT-Master, Aktien Nordamerika 2, the "Funds of Funds" or the "Special Investors"; and failed to examine the Articles of Association (or similar formation documents) and structure of the numerous entities that now form the basis of Société Générale's motion.[5] Because Kern's opinion is based on generalizations of German law, is riddled with assumptions, and is purely speculative, it should not be credited. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 667 (6th Cir. 2010) (rejecting expert's conjecture when "nothing in his testimony suggests the sort of 'knowledge' [required]—only speculation, which is generally inadmissible").[6]

---

[5] *In re Herley Industries Inc. Securities Litigation*, 2009 WL 3169888 (E.D. Pa. Sept. 30, 2009), relied upon by Société Générale and Birmingham, offers no support. In that case, the court specifically limited its holding "to the unique circumstances of this case," where the investment advisor belatedly secured standing through assignments but had already been serving as Lead Plaintiff "for more than two years." *Id.* at *9 & n.11. *In re Vivendi Universal, S.A. Securities Litigation*, 605 F. Supp. 2d 570 (S.D.N.Y. 2009) is similarly inapposite. The plaintiffs in that case "produced sufficient documentary evidence and deposition testimony" with regard to the prudential exception. *Id.* at 579. Here, Société Générale failed to submit key underlying documents (as identified above), and Société Générale's standing issues, "now revealed, can be circumvented at this early stage by selecting another Lead Plaintiff." *Baydale*, 2009 WL 2603140, at *3 (rejecting *Vivendi* and counseling against appointment of movant when "it is possible that these [standing] issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal") (citation omitted).

[6] Société Générale's and Birmingham's reliance on *City of Taylor Police and Fire Retirement System v. Western Union Company*, 2014 WL 4799659, at *5 (D. Colo. Sept. 26, 2014) is misplaced. There, the court considered specific evidence regarding whether a movant was entitled to rely on the prudential exception, including facts gleaned from defendants' expert in other litigation. *Id.* at *4. In addition, "the factual and legal basis" of the movant's standing argument in *Taylor* was "unchanged between the time it filed its motion for appointment as Lead Plaintiff" and the time it submitted evidence regarding its standing. *Id.* at *5. No such evidence is present here and Société Générale's claim to standing is a continuously moving target.

6

Any attempt by Société Générale to cure these defects now should be rejected. Société Générale had two months to properly prepare its motion seeking appointment as Lead Plaintiff, and in that motion, attested that its standing was based on the loss Société Générale itself incurred. ECF Nos. 20-1 at 4, 21-4 ¶2. In its four-page opposition brief, Société Générale and Birmingham did not advance any alternative basis for standing and reiterated that Société Générale incurred the loss. *See* ECF No. 37. It was only on reply—when forced to acknowledge that Société Générale incurred ***no loss***—that Société Générale advanced two entirely new bases for standing that ***conflict*** with Société Générale's prior arguments and with each other. Société Générale's gamesmanship should not be condoned. Its arguments have long-since been waived. *See Blount v. Colvin*, 2014 WL 4231182, at *10 (N.D. Ohio Aug. 21, 2014) ("Plaintiff waives any new argument first raised in a reply brief") (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).

Critically, Société Générale has not even attempted to correct the record and withdraw its prior inconsistent statements and arguments that it actually purchased HCP stock and incurred a loss. Instead, it continues to urge the Court to credit those same inaccurate statements regarding Société Générale's personal loss advanced in Société Générale's and Birmingham's Joint Declaration as the basis to appoint them together. *See* ECF Nos. 21-4 ¶3, 41 at 7-8. But Société Générale now admits that it incurred no such loss and the fact that Birmingham decided to work with Société Générale specifically because of that loss, demonstrates that there is no reason to appoint Société Générale and Birmingham together. *Id.*

**B.**     **Société Générale's And Birmingham's Attacks Are Untimely, Factually Baseless, And Highlight The Deficiencies Of Their Motion**

In a desperate effort to deflect attention from their own inadequacy, Société Générale and Birmingham loft *ad hominem* attacks against Mississippi and one of its counsel. *See* ECF No. 41 at 14 n.6. Not only were these attacks improperly asserted for the first time in Société Générale's

and Birmingham's reply, but they are entirely speculative and baseless in that they are drawn from unsupported allegations in an unrelated matter, which were withdrawn. *See* Simpkins Decl., Ex. A. As the court in that case noted, the accusations on which Société Générale and Birmingham rely are "simply allegations, the truth of which has not been proven." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 136 (2d Cir. 2016). Such allegations and innuendo do not bear on the adequacy of Mississippi or its counsel here, and have been continuously rejected by courts. *See In re Initial Pub. Offering Sec. Litig.*, 499 F. Supp. 2d 415, 419 (S.D.N.Y. 2007) (refusing to "credit [] unsupported accusations"). In addition, Bernstein Litowitz has been appointed as Lead Counsel in 11 securities class actions since the withdrawn allegations became public, including one case in which it serves as Co-Lead Counsel with one of Société Générale's counsel—Robbins Geller—on consent between the firms.[7]

The fact that Société Générale and Birmingham would resort to raising these misguided and unsubstantiated allegations on reply—when they clearly could have been raised in their opposition brief—demonstrates just how desperate Société Générale and Birmingham have become. Indeed, in stark contrast with Société Générale, Mississippi has consistently served as a transparent, responsible steward for investors as Lead Plaintiff in securities class actions and has recovered $5 billion in cases subject to the PSLRA. *See* ECF No. 23-1 at 9-11. As required by law, Mississippi publicly reports all contingency fee contracts and the written determinations as to the reason why the contracts are required. *See* Miss. Code § 7-5-8(5) (2013). Mississippi has a panel of law firms dedicated to advising it with regard to securities class actions, and a devoted

---

[7] Demonstrating the insincerity of Société Générale's argument, since these allegations became public, one of its counsel, Motley Rice, executed a contract to be added to Mississippi's panel of securities monitoring counsel. Further, Mississippi was just appointed as Lead Plaintiff in another case in which its motion was unopposed by other sophisticated institutional investors. *See Bryan v. Banco Bradesco S.A.*, No. 1:16-cv-04155-GHW, slip op. at 1 (S.D.N.Y. Aug. 12, 2016), ECF No. 21. Simpkins Decl., Ex. B.

8

Board and staff responsible for overseeing its prosecution of actions in which it is serving as Lead Plaintiff.[8] Mississippi's standing in this case is uncontested and there is no credible basis to otherwise question Mississippi's typicality or adequacy, given its impeccable track record when serving as Lead Plaintiff.

## CONCLUSION

For the reasons discussed above, Mississippi respectfully requests that the Court appoint it to serve as Lead Plaintiff and otherwise grant its motion.

Dated: August 16, 2016

Respectfully Submitted,

/s/ *Scott D. Simpkins*
John R. Climaco (0011456)
Scott D. Simpkins (0066775)
**CLIMACO WILCOX PECA TARANTINO & GAROFOLI CO., LPA**
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com
sdsimp@climacolaw.com

*Local Counsel for Proposed Lead Plaintiff*
*Public Employees' Retirement System of Mississippi*

Gerald H. Silk *(admitted pro hac vice)*
Avi Josefson *(admitted pro hac vice)*
Rebecca E. Boon *(admitted pro hac vice)*
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas

---

[8] Société Générale and Birmingham misapprehend the process by which Mississippi selected and retained counsel. After Mississippi formally determined to seek appointment as Lead Plaintiff in this action, on July 11, 2016, it signed a Certification as required by the PSLRA. Thereafter, Mississippi retained Gadow Tyler to serve as its liaison in this action, which Mississippi formalized through the execution of a retention agreement on July 18, 2016. Because Gadow Tyler is not seeking Court appointment for the Class in this case, Gadow Tyler was not part of Mississippi's Lead Plaintiff motion. Gadow Tyler's role as liaison counsel to Mississippi will begin if Mississippi is appointed as Lead Plaintiff, and Gadow Tyler will appear in this case at that time. In addition, Société Générale's and Birmingham's claim regarding the timing of Mississippi's counsels' retention is a non-starter. Mississippi law simply requires Mississippi to make a written determination that contingent fee representation is in the public interest prior to entering into such a contract. *See* Miss. Code § 7-5-8(1) (2013). Mississippi satisfied this requirement.

9

New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
rebecca.boon@blbglaw.com

Jeffrey W. Golan
Chad A. Carder
Julie B. Palley
**BARRACK, RODOS & BACINE**
3300 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838
jgolan@barrack.com
ccarder@barrack.com
jpalley@barrack.com

*Counsel for Proposed Lead Plaintiff*
*Public Employees' Retirement System of Mississippi*
*and Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically this 16th day of August 2016.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Scott D. Simpkins*
John R. Climaco (0011456)
Scott D. Simpkins (0066775)
**CLIMACO WILCOX PECA TARANTINO
& GAROFOLI CO., LPA**
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com
sdsimp@climacolaw.com

*Local Counsel for Proposed Lead Plaintiff
Public Employees' Retirement System of Mississippi*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| BOYNTON BEACH FIREFIGHTERS' PENSION FUND on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HCP, INC.; HCR MANORCARE, INC.; LAURALEE MARTIN; TIMOTHY SCHOEN; PAUL A. ORMOND; and STEVEN M. CAVANAUGH,<br><br>Defendants. | No. 3:16-cv-01106-JJH |

**SUR-REPLY DECLARATION OF SCOTT D. SIMPKINS IN SUPPORT OF THE MOTION OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTION**

I, Scott D. Simpkins, declare as follows:

1. I am a member in good standing of the bars of the State of Ohio and of this Court. I am a partner in the law firm of Climaco, Wilcox, Peca, Tarantino & Garofoli Co., L.P.A. I submit this sur-reply declaration in support of the Motion filed by the Public Employees' Retirement System of Mississippi for appointment as Lead Plaintiff and approval of its selection of Bernstein Litowitz Berger & Grossmann LLP and Barrack, Rodos & Bacine to serve as Lead Counsel for the Class; in opposition to the competing motion; and for any such further relief as the Court may deem just and proper.

2. Attached as Exhibits A and B are true and correct copies of the following documents:

> **EXHIBIT A:** Statement of Bruce D. Bernstein dated February 19, 2015; and
>
> **EXHIBIT B:** Order Granting The Motion Of Public Employees' Retirement System Of Mississippi For Appointment As Lead Plaintiff And Approval Of Its Selection Of Counsel, *Bryan v. Banco Bradesco S.A.*, No. 1:16-cv-04155-GHW (S.D.N.Y. Aug. 15, 2016), ECF No. 24.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed this 16th day of August, 2016.

*/s/ Scott D. Simpkins*
Scott D. Simpkins

# EXHIBIT A

## Statement of Bruce D. Bernstein

On August 22, 2014, I commenced a lawsuit captioned *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, et al.*, No. 14 Civ. 6867 (VEC) (S.D.N.Y) (the "S.D.N.Y. Action"). At the time I filed my complaint in the S.D.N.Y. Action, based on my investigation and analysis, I believed in good faith that the complaint was well-grounded in both fact and law. In the course of the proceedings that followed the filing of the S.D.N.Y. Action and as a result of communications between my legal counsel and counsel for defendants, I received information that seriously challenges my claims. Among other things, my counsel and I interviewed witnesses to the events from which my claims arose, and we also reviewed relevant documentation. Based on the foregoing information, it is now my belief that, although I had a good faith basis for asserting the allegations and claims in the S.D.N.Y. Action at the time the complaint was filed, the information presents insurmountable factual and legal challenges to my ability to recover other than a breach of contract claim seeking a bonus from the Firm in connection with its representation of Richard Reynolds in the *Merck* class action litigation, MDL No. 1658 (SRC) (D.N.J.), on the basis that Mr. Reynolds was my client at the time I joined the Firm.

_____
Bruce D. Bernstein

February 19, 2015

# EXHIBIT B

Case 1:16-cv-04155-GHW Document 49 Filed 08/15/16 Page 1 of 2

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __8/15/2016__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM BRYAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BANCO BRADESCO S.A., LUIZ CARLOS TRABUCO CAPPI, ALEXANDRE DA SILVA GLÜHER, and JULIO DE SIQUEIRA CARVALHO DE ARAUJO,<br><br>Defendants. | Case No. 16 Civ. 4155 (GHW) |

[PROPOSED] ORDER GRANTING THE MOTION OF PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF COUNSEL

Having considered the Motion of Public Employees' Retirement System of Mississippi for Appointment as Lead Plaintiff and Approval of Its Selection of Counsel (the "Motion"), the Memorandum of Law and Declaration of Michael W. Stocker in support thereof, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), Public Employees' Retirement System of Mississippi is appointed to serve as Lead Plaintiff in the above-captioned action and any subsequently filed or transferred actions that relate to the above-captioned action.

3. The law firm of Kessler Topaz Meltzer & Check, LLP is hereby approved as Lead Counsel for the class. Lead Counsel shall have the authority to speak for all plaintiffs and class members in all matters regarding the litigation including, but not limited to, pre-trial proceedings, motion practice, trial, and settlement. Additionally, Lead Counsel shall have the following responsibilities:

    a. to brief and argue motions;

    b. to initiate and conduct discovery, including, without limitation, coordination of discovery with defendants' counsel, the preparation of written interrogatories, requests for admissions, and requests for production of documents;

    c. to direct and coordinate the examination of witnesses in depositions;

    d. to act as spokesperson at pretrial conferences;

    e. to initiate and conduct any settlement negotiations with counsel for defendants;

   f.  to consult with and employ experts; and

   g.  to perform such other duties as may be expressly authorized by further order of this Court.

 4. Labaton Sucharow LLP is hereby approved as Liaison Counsel for the class.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 11, 13, and 17.

IT IS SO ORDERED.


DATED: August 15, 2016  
New York, New York

         _____  
         THE HONORABLE GREGORY H. WOODS  
         UNITED STATES DISTRICT JUDGE