UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Boynton Beach Firefighters'
Pension Fund, On Behalf of Itself
and All Others Similarly Situated,                    Case No. 3:16-cv-1106

                Plaintiff,

     v.                                            MEMORANDUM OPINION
                                              AND ORDER

HCP, Inc., et al.,

                Defendants.

### I. INTRODUCTION AND BACKGROUND

On November 22, 2019, I granted the motion of Defendants HCP, Inc., Lauralee E. Martin, Timothy Schoen, and Darren A. Kowalske (the "Defendants") to dismiss the Consolidated Amended Class Action Complaint filed by Lead Plaintiffs Société Générale Securities Services GmbH and the City of Birmingham Retirement and Relief System (collectively, "Lead Plaintiffs").

Lead Plaintiffs now seek leave to amend their complaint. (Doc. No. 116). The Defendants oppose the motion for leave to amend, (Doc. No. 123), and Lead Plaintiffs have filed a brief in reply. (Doc. No. 125).

I laid out the factual background of the case in my earlier opinion and incorporate that background into this opinion except to the extent the facts alleged have been modified by Lead Plaintiffs' proposed first amended complaint:

> HCP is a real estate investment trust ("REIT") that primarily leases the real property it owns to companies involved in the healthcare industry. Martin previously served as HCP's Chief Executive Officer and President, while Schoen was HCP's Executive Vice President and Chief Financial Officer. Kowalske served first as the "Senior Vice President of Hospital and Post-Acute" and the "[Executive Vice President] of Asset Management, Senior Housing and Care." (Doc. No. 85 at 13).
>
> On April 7, 2011, HCP entered into an agreement with HCR ManorCare in which HCP purchased substantially all of ManorCare's real estate assets and then leased those assets back to ManorCare. (Doc. No. 85 at 6-7). In connection with this transaction, HCP also acquired a 9.9% equity ownership interest in ManorCare (jointly, the "2011 Transactions"). (*Id.* at 7). Lead Plaintiffs allege ManorCare accounted for approximately 30% of HCP's revenue stream following these transactions. (*Id.*).
>
> Lead Plaintiffs allege ManorCare was "heavily dependent upon revenue generated by unlawful and unsustainable billing practices," including alleged Medicare fraud. (Doc. No. 85 at 7). ManorCare, they allege, engaged in a variety of practices designed to increase revenues by increasing the percentage of services for which it could bill at Medicare's higher or highest reimbursement level, grouping patients together to permit physical and occupational therapists to bill for multiple therapy sessions at one time, and maximizing the length of a patient's stay in a ManorCare facility.
>
> Lead Plaintiffs assert that, between 2009 and 2011, three individuals who previously worked as therapists for ManorCare each filed *qui tam* complaints to assert False Claims Act claims against ManorCare as a result of these billing practices. Lead Plaintiffs further allege HCP had access to information concerning ManorCare's billing practices before completing the 2011 Transactions.
>
> In early 2013, the Department of Justice served a Civil Investigative Demand at ManorCare's corporate headquarters. That investigation led to the United States intervening in the *qui tam* actions in December 2014.
>
> Lead Plaintiffs allege all Defendants violated § 10(b) of the Exchange Act and Rule 10b-5, and that the individual Defendants violated § 20(a) of the Exchange Act. Lead Plaintiffs assert their securities fraud claims on behalf of a class of all individuals or entities who purchased or acquired HCP's common stock between March 30, 2015, and February 8, 2016, inclusive (the "Class Period"). (Doc. No. 85 at 115).

(Doc. No. 114 at 2-3).

Following briefing and oral argument on Defendants' motion to dismiss, I concluded Lead Plaintiffs did not sufficiently allege facts to support the element of scienter and thus failed to state a claim under § 10(b), Rule 10b-5, or § 20(a).

2

For the reasons stated below, I conclude Lead Plaintiffs' proposed amended complaint does not remedy the deficiencies in the original complaint and deny their motion to amend.

## II. STANDARD

Rule 15 provides a party may amend its pleadings once as a matter of course within 21 days of serving the pleading or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. Pro. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

Securities-fraud claims also "implicate the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Doughtery v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018). A plaintiff also must "'allege the time, place, and content of the alleged misrepresentation [or omission] on which he or she relied [and] the fraudulent scheme . . . .'" *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 470 (6th Cir. 2014) (citation omitted).

## III. ANALYSIS

### A. UNDUE DELAY

Defendants first argue I should deny the motion to amend because Lead Plaintiffs waited until after I granted Defendants' motion to dismiss before they sought to remedy the Complaint's

3

deficiencies. (Doc. No. 123 at 15-19). They contend the "Sixth Circuit has repeatedly affirmed district court rulings denying plaintiffs leave to amend in securities cases governed by the [Private Securities Litigation Reform Act ("PSLRA")] in precisely these circumstances." (*Id.* at 17). They further assert Lead Plaintiffs' motion should be denied under Rules 59 and 60 of the Federal Rules of Civil Procedure because Lead Plaintiffs cannot carry their burden under those Rules. (*Id.* at 16 n.24).

Defendants' delay arguments are not persuasive. I previously stated it was unnecessary for Defendants to address the Rule 59 standard in light of my representation during the October 23, 2018 hearing that I would permit Lead Plaintiffs an opportunity to remedy deficiencies in the complaint. (Doc. No. 119 at 1; Doc. No. 108 at 70). I informed the parties that I would provide Lead Plaintiffs an opportunity to propose amendments and Defendants an opportunity "to challenge the appropriateness of any amendment . . . ." (Doc. No. 108 at 70). That is precisely the posture in which this case currently stands, and Defendants offer no reason why it would be appropriate for me to walk back my earlier representations.

**B. SECTION 10(B) AND RULE 10(B)-5 CLAIMS**

To state a claim for securities fraud under §10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 157 (2008)).

A plaintiff who alleges "the defendant made a false or misleading statement must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u–4(b)(1); and (2) 'state with particularity facts giving rise to a strong

inference that the defendant acted with the required state of mind,' § 78u–4(b)(2)." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). A court must consider collectively all of the facts the plaintiff alleges to determine whether the allegations give rise to a "cogent and compelling" inference that the defendant acted with the intent to deceive, manipulate, or defraud. *Id.* at 324.

Lead Plaintiffs describe their allegations as "straightforward": that "Defendants were directly and explicitly informed of facts confirming that ManorCare was no longer financially viable and was unable to meet its lease obligations to HCP, rendering HCP's largest and most important assets . . . substantially overvalued and impaired." (Doc. No. 125 at 9). Based on what they describe as newly-discovered evidence, Lead Plaintiffs allege Defendants did not, but should have, disclosed that ManorCare CEO Paul Ormond "informed HCP of the 'manifest need to significantly restructure' the lease agreement and clearly laid out the '*necessary adjustments*' ManorCare required. Among other things, those adjustments included reducing the agreement's rent escalator *by more than 40%* from 3.5% to 2%." (Doc. No. 117-1 at 33 (emphasis in original)). They argue this evidence renders false or misleading Defendants' subsequent statements that ManorCare's rental payments were reasonably assured.

Lead Plaintiffs also contend that, in light of ManorCare's required lease adjustments and other communications between Ormond and the individual Defendants, Defendants offered misleading or false representations as to the viability of ManorCare's business on several occasions throughout 2015. Beginning with the Form 8-K that HCP filed with the SEC on March 30, 2015, and continuing through Form 10-Qs filed on May 5, August 4, and November 3, 2015, Lead Plaintiffs contend that Defendants failed to acknowledge that its investment in ManorCare had "no value at all" and was being overvalued by as much as $817 million. (Doc. No. 117-1 at 35, 36-37, 41, and 47). Lead Plaintiffs also contend the individual Defendants made false and misleading

5

statements during public events on May 11, August 4, September 17, and November 3, 2015. (*Id.* at 37-38, 41, 43-44, and 47-48).

Lead Plaintiffs' arguments fall short because Ormond's statements are not the smoking gun Lead Plaintiffs desire them to be. As Defendants contend, these statements represent ManorCare's bargaining position; Lead Plaintiffs do not identify facts which support the necessary inference that ManorCare's desired 2% escalator was sustainable but the mutually-agreed-upon 3% escalator rendered HCP's investment worthless. (*See* Doc. No. 117-1 at 33). Without more, Ormond's use of the word "necessary" does not move Lead Plaintiffs' allegations across "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).

Nor are Lead Plaintiffs' other rent-related allegations sufficient. Though Lead Plaintiffs make much of the fact that ManorCare owed $445 million in back rent by the time it filed for bankruptcy, (Doc. No. 125 at 24), that filing did not occur until March 2018, nearly three years after the lease renegotiation. (Doc. No. 117-1 at 52). According to Lead Plaintiffs, the first missed payments occurred two years after the renegotiation, at which point ManorCare was able to pay only 81% of the payment due. (*Id.* at 51-52 (cash payment of $32 million per month plus deferral of $7.5 million per month)). With the rent escalation clause accounting for a difference less than $400,000 per month,[1] the causal connection on which Lead Plaintiffs rely is speculative, not plausible.

Moreover, Lead Plaintiffs do not identify any caselaw establishing that this type of nonpublic information is categorically material. *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (holding an omitted fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the

---

[1] Lead Plaintiffs allege ManorCare owed a total of $39.5 million per month in rent for the second quarter of 2017. A 3% rent escalation clause means ManorCare paid approximately $38.35 million per month in the previous contract term year ($39.5 million divided by 1.03 equals $38.35 million). If the parties had adopted ManorCare's proposal, the monthly rent payment would have been $39.12 million ($38.35 million times 1.02), a difference of $380,000 per month.

6

'total mix' of information made available." (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976))). On the contrary, requiring corporate management to disclose rejected contractual terms instead would fulfill the Supreme Court's concern that "management [will] simply . . . bury the shareholders in an avalanche of trivial information." *Basic*, 485 U.S. at 231 (citation and internal quotation marks omitted).

Lead Plaintiffs do not identify the contours of the "necessary adjustments" other than the rent-escalator clause, and they fail to show that a reasonable investor would have found actionable the fact that ManorCare sought to further lower its rental obligations. Their allegations do not make it plausible that Defendants engaged in "highly unreasonable conduct which is an extreme departure from the standards of ordinary care . . . akin to conscious disregard." *Dougherty*, 905 F.3d at 980.

Lead Plaintiffs also fail to state a plausible fraud claim because they have not shown Defendants' remaining statements, viewed in context, were false or misleading.

First is Martin's statement, in response to a question about ManorCare's "current trends into August," that ManorCare was "ahead of their budget." (Doc. No. 117-1 at 41). Lead Plaintiffs contend this answer was false and misleading because it did not accurately reflect the fact that ManorCare was behind budget in the months of June and July 2015. (Doc. No. 125 at 28).

Lead Plaintiffs, however, try to put too fine a point on this response. As they acknowledge, Martin stated "We discussed HCR and we continue to be pleased that they're ahead of their budget." (Doc. No. 117-1 at 41). Earlier in the call, Martin did in fact discuss HCR, stating "HCR ManorCare's normalized year-to-date EBITDAR results are 2.6% above prior year and ahead of their budget." (Doc. No. 123-24 at 4). Contrary to Lead Plaintiffs' argument, Martin's statement contained a "reference to ManorCare's year-to-date budget," (Doc. No. 125 at 28), because she referred back to her earlier statements on ManorCare during the same earnings call. Lead Plaintiffs fail to show demonstrate "why the statement is misleading." *Tellabs*, 551 U.S. at 321.

7

A brief aside is necessary here – Lead Plaintiffs take issue with Defendants' proffer of certain exhibits which contain "internal HCP reports and communications that Plaintiffs have never been given an opportunity to probe or challenge through deposition testimony or discovery of evidence that could potentially undermine or explain them." (Doc. No. 125 at 18). This argument falls short with respect to the earnings call transcripts because Lead Plaintiffs refer to those transcripts in the complaint and their contents are central to Lead Plaintiffs' claims. *See, e.g., Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013) (noting that though matters "outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss, documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim") (citation and internal quotation marks omitted). I need not decide this issue as to the remaining exhibits because Lead Plaintiffs fail to state a claim even leaving aside those documents.

Next, Lead Plaintiffs seek to rely on Martin's statements during a conference on September 17, 2015, alleging "at the very least, it was materially misleading for Defendants to state that 'ManorCare started the year really, really strong,' without disclosing the reality that ManorCare had been struggling and 'behind budget' for multiple months and that the negative trends were 'not likely to change.'" (Doc. No. 117-1 at 45). As Defendants note, Lead Plaintiffs attempt to highlight potentially problematic statements without acknowledging the context of those statements. In particular, Lead Plaintiffs omit Martin's qualification that ManorCare had "given back some of that above-budget performance," and that ManorCare's "strong" performance in some areas was "not enough to completely offset" the loss. (Doc. No. 123-26 at 6). Ormond's statement that ManorCare was "not likely to hit budgeted earnings levels during the remainder of the year," (Doc. No. 117-1 at 43), is not sufficient to turn Defendants' "misguided optimism" into fraud, in the light of future events. *Albert Fadem Tr. v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 1017 (S.D. Ohio 2004)

(quoting *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1129 (2d Cir. 1994)).

Lead Plaintiffs also argue Martin made materially misleading statements during a November 3, 2015 earnings call by stating "that ManorCare was doing 'quite well.'" (Doc. No. 125 at 33). Lead Plaintiffs again attempt to strengthen their hand by pulling the statements out of context. Martin reported her belief that ManorCare was adapting to the change to "Medicare Advantage . . . quite well," but acknowledged ManorCare's revenues – estimated at approximately $3.1 billion – had declined 0.3% from the previous year. (Doc. No. 117-1 at 48). The statements Martin made were consistent with the information ManorCare provided a few weeks prior. (*See* Doc. No. 123-28 at 2-3 (email from Matt Kang at ManorCare to Schoen and Kowalske)). That is, Martin accurately disclosed facts about ManorCare's business. Lead Plaintiffs fail to show her statement was misleading simply because she did not pass on Kowalske's off-the-cuff comment that ManorCare's report was "[n]ot a pretty sight." (*Id.* at 2).

Lastly, as to their allegations that HCP's investment in ManorCare had "no value at all," (*see, e.g.,* Doc. No. 117-1 at 47), Lead Plaintiffs have "seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones." *Albert Fadem Tr.*, 334 F. Supp. 2d at 1017 (quoting *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978)). In each quarterly report Lead Plaintiffs attack, HCP recorded impairments and indicated ManorCare was losing value. Lead Plaintiffs have not alleged facts which show Defendants erred in not writing down the value of ManorCare to zero earlier, much less that they were deliberately reckless in not doing so.

Moreover, I previously held a temporal proximity of two to three months between Defendants' positive statements and subsequent adverse disclosure "could be considered 'minimal' evidence of scienter." (Doc. No. 114 at 10). Allegations that the impairments HCP took in February 2016 prove Defendants' statements made in March 2015 – ten months earlier – were fraudulent simply cannot stand up to scrutiny. *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1042

9

(6th Cir. 1991) (affirming district court's denial of motion to amend where plaintiff "is only alleging 'fraud by hindsight'").

While the Supreme Court instructs courts evaluating whether a § 10(b) claim states a claim on which relief may be granted to "accept all factual allegations in the complaint as true," courts also must "take into account plausible opposing inferences" to determine whether "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 322, 324. Lead Plaintiffs' allegations "do not give rise to the requisite 'strong inference' of scienter," *id.* at 324, and do not support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I deny Lead Plaintiffs' motion to amend their § 10(b) claims because their proposed amendments would not withstand a Rule 12(b)(6) motion to dismiss and are futile.

Finally, I also deny Lead Plaintiffs' motion to amend to the extent it seeks to restate their related § 20(a) claims. *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1045 (6th Cir. 2016) (Because [the plaintiff's] complaint alleges no primary violation of the securities laws, its § 20(a) control-person claims [are] properly dismissed.")

## IV. CONCLUSION

For the reasons stated above, the Lead Plaintiffs' motion for leave to amend their complaint, (Doc. No. 116), is denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
